# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOHNNIE LEE REEVES,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    Case No. CIV-20-491-AMG |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **ACTING COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,**[1] | ) |
| | ) |
|     **Respondent.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnnie Lee Reeves ("Plaintiff"), brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for supplemental security income ("SSI"). (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 17, 19). The parties have briefed their respective positions (Docs. 22, 27, 28).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 20, 23). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

**I.    The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. *See* 20 C.F.R. §§ 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750- 51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

2

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if he is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*,

---

[3] RFC is "the most [a claimant] can do despite [a claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History

On November 11, 2016, Plaintiff filed an application for SSI, alleging disability beginning September 1, 2016. (*See* AR, at 11). The SSA denied the application initially and on reconsideration. (*Id.* at 51, 61). Following a hearing on April 23, 2019, at which Plaintiff was not represented by counsel, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 11-20). The Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Thus, the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III.   The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 11, 2016, the application date. (AR, at 14). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of degenerative disc disease, degenerative joint disease to the bilateral shoulders, and obesity. (*Id.*) The ALJ also found Plaintiff's hypertension was a non-severe impairment. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ next determined that Plaintiff had the RFC to perform light work with the following limitations:

> [He] can occasionally reach overhead with the right upper extremity, but never reach overhead with the dominant left upper extremity. [He] can never crawl.

(*Id.* at 15-18). At Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 18). At Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as furniture rental clerk, photo copy machine operator, and marker (*Id.* at 18-19). Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA. (*Id.* at 19).

**IV.   Issues Presented for Judicial Review**

Plaintiff contends the ALJ erred by not ordering consultative examinations ("CEs") regarding his mental and physical impairments. (Doc. 22, at 10-16; Doc. 28, at 1-7). He also asserts the ALJ erred in his Step Five analysis. (Doc. 22, at 16-23; Doc. 28, at 7-10).

## V. Analysis

### A. Plaintiff Argues the ALJ Should Have Ordered Consultative Examinations for His Alleged Mental Impairments and His Established Physical Impairments.

As set forth in detail below, the record in this matter contains various references to Plaintiff's mental health issues. However, the ALJ did not discuss any potential mental impairments in the decision denying benefits. (AR, at 11-20). Plaintiff argues that the ALJ should have ordered CEs regarding his alleged mental impairments as well as his physical impairments of degenerative disc and joint diseases. (Doc. 22, at 10-16; Doc. 28, at 1-7). The Commissioner contends further development of the record is not necessary. (Doc. 27, at 7-14). The Court finds that the ALJ should have ordered a CE for Plaintiff's alleged mental impairments. But, the Court also finds that further development of the record regarding Plaintiff's physical impairments is not necessary.

### 1. The ALJ's Duty to Develop the Record and Guidelines for Requesting a Consultative Examination.

"[A]dministrative disability hearings are nonadversarial . . . [,] and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall*, 561 F.3d at 1062 (internal quotation marks omitted). This "duty is heightened when the claimant is unrepresented." *Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts." *Id.* (internal quotation marks omitted).

An ALJ "has broad latitude" in ordering CEs. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). The applicable regulation governing CEs provides:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of your medical sources;
> >
> > (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> >
> > (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
> >
> > (4) There is an indication of a change in your condition that is likely to affect your ability to work . . . but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b)(1)-(4). "[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167. If Plaintiff meets such a burden, "it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* "But there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016).

## 2. The ALJ Erred by Not Ordering a Consultative Examination for Plaintiff's Alleged Mental Impairments.

Although Plaintiff did not list any mental impairments in the "medical conditions" sections of the first two disability reports in the record (AR, at 200, 210), Plaintiff noted he had been treated or had a future appointment to be treated for mental conditions in a second supplemental disability report. (AR, at 224). Moreover, there was sufficient evidence in Plaintiff's medical records to suggest a mental impairment.

On November 12, 2014, Dr. Priya Samant, M.D., Plaintiff's treating physician, noted diagnoses of situational depression and bipolar disorder and that Plaintiff took Prozac once per day. (*Id.* at 435). Although this record is from nearly two years prior to the alleged onset date, it is still relevant, and the ALJ should have addressed it. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); *Farrell v. Colvin*, 2016 WL 4128452, at *5 (D. Kan. Aug. 3, 2016) ("[R]ecords from before the amended onset date . . . are nonetheless part of Plaintiff's case record and should be considered.").

On a June 14, 2016, visit to Variety Care, Eunice Simon, Advanced Practice Registered Nurse-Certified Nurse Practitioner (APRN-CNP), diagnosed Plaintiff with insomnia and prescribed Doxepin 100. (*Id.* at 287-89). During a June 8, 2017, visit to Variety Care, Plaintiff reported not being able to sleep at night due to stress. (*Id.* at 311). Although Plaintiff was offered trazodone, he instead "was insistent about a certain drug

8

(that he couldn't remember the name of) that he was given at NorthCare that helped him sleep." (*Id.* at 313). NorthCare is a local mental health clinic. Ms. Simon assessed Plaintiff with adjustment insomnia and noted she would request records from NorthCare.[4] (*Id.*)

On an October 12, 2017, visit, Plaintiff underwent a screening for adult depression, and Dr. Samant ordered a follow-up with a behavioral health specialist. (*Id.* at 348). During a November 30, 2017, visit, Dr. Samant diagnosed Plaintiff with primary insomnia. (*Id.* at 347).

At an April 19, 2018, screening with the Oklahoma Department of Corrections ("ODOC"), Plaintiff advised he had been hospitalized at NorthCare for depression and bipolar disorder. (*Id.* at 485-86). Marcus Whal, Registered Nurse, referred Plaintiff to a psychiatrist. (*Id.* at 486). On April 20, 2018, Fatai Na-Allah, an ODOC psychological clinician, conducted a mental health screening interview. (*Id.* at 482-84). Plaintiff reported

---

[4] Regarding this record, the state agency examiner on reconsideration noted on September 14, 2017, that:

> [a] potential mental impairment is suggested by the claimant's TP. The MER indicates difficulty sleeping related to stress and shoulder pain. The APRN diagnosed Insomnia. Treatment for a mental impairment has not been recommended or received. A careful review of all the evidence indicates there are no work-related functional limitations resulting from the potential mental impairment, and there is no medically determinable mental impairment. The claimant is able to perform his own personal care, prepares light meals, does simple HH chores, can use public transportation and go out independently, socializes w/ friends and family, and has no problems following instructions. Per POMS DI 24505.-3-, further development of the potential mental impairment is curtailed.

(AR, at 220). The examiner was not a state agency doctor, and much of the evidence before the ALJ was not submitted until after the examiner's decision. (*Id.* at 72).

9

mild depression and advised he was treated at NorthCare in 2014 for bipolar disorder and depression and at the Oklahoma County Jail in 2018 for manic depression. (*Id.* at 482, 484). The report also notes that Plaintiff was using Celexa and Zyprexa as psychotropic medications. (*Id.* at 483). Ms. Na-Aallah assessed Plaintiff with suspected depressive disorder and referred him to a psychiatrist for medication. (*Id.* at 483-84).

On April 23, 2018, Asha Joseph, APRN-CNP, conducted Plaintiff's initial intake physical examination. (*Id.* at 401-05). The report indicates Plaintiff began taking Citalopram, Depakote, and Risperidone, all drugs used to treat mental health conditions, on the same date. (*Id.* at 401).

On April 24, 2018, Plaintiff again visited Ms. Na-Allah. (*Id.* at 400-01). Plaintiff reported that he could not sleep at night due to racing thoughts. (*Id.* at 400). He believed it may be a result of not being on his psychiatric medication, and he requested that he be placed back on his medications. (*Id.*) Ms. Na-Allah reported Plaintiff's mood was anxious and his affect was within normal limits. (*Id.*) Plaintiff was assessed with "suspected" mood disorder and depressive disorder.[5] (*Id.*)

Plaintiff's November 26, 2018, ODOC medical discharge summary indicated that Plaintiff was at mental health level "MH-B" and he may require medication and a scheduled treatment program or therapy. (*Id.* at 365).

---

[5] Later ODOC records note an assessment of suspected amphetamine-induced mood disorder in addition to the suspected general mood disorder and depressive disorder. (*See, e.g.*, AR, at 375, 376, 380).

10

Dr. Samant wrote a letter on March 6, 2019, noting that she recommended that Plaintiff apply for disability and opined that Plaintiff was unable to work "due to multiple medical problems" – including depression and insomnia. (*Id.* at 345).

The Court notes that much of the evidence addressing Plaintiff's mental condition comes from sources that are – at least for the purposes of Plaintiff's claim – not considered acceptable medical sources. 20 C.F.R. § 416.902 (a)(7)-(8) (licensed advanced practice registered nurses and licensed physician assistants are not considered acceptable medical sources for claims filed before March 27, 2017). And an impairment "must be established by objective medical evidence from an acceptable medical source." *Id.* at § 416.921. While Dr. Samant, a medical doctor and acceptable source, noted Plaintiff's depression during the relevant period, her references were not supported by medical evidence. (AR, at 345). Other diagnoses and prescriptions came from practitioners who were not acceptable medical sources. If the same evidence had come from an acceptable medical source, the ALJ would have been required to analyze Plaintiff's condition as a mental impairment. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[T]he ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*"); *George v. Astrue*, 451 F. App'x 767, 768 (10th Cir. 2011) (holding the ALJ erred by failing to consider whether the claimant had a mental disability where the record showed a "substantial documented and diagnosed history of depression and anxiety and has been repeatedly prescribed medication to treat those conditions"); *Lamb v. Barnhart*, 85 F. App'x 52, 57 (10th Cir. 2003) (holding the record established the

presence of a mental impairment where a doctor diagnosed the claimant as suffering from depression and was prescribed medication for depression).

Although the record did not establish a medically determinable mental impairment, the Court finds that the record as a whole "suggests a reasonable possibility that a severe [mental] impairment exists." *Hawkins*, 113 F.3d at 1167. The Court also finds that a CE is necessary to resolve the issue of whether the conditions amount to a medically determinable impairment. *See* 20 C.F.R. § 416.919a(b) (contemplating ordering a CE to obtain a diagnosis or prognosis). Here, a diagnosis or prognosis is necessary because no acceptable medical source has made a sufficient diagnosis of the condition during the relevant time period despite sufficient evidence in the record regarding Plaintiff's mental condition. Further, the Court finds it relevant that Plaintiff was unrepresented at the hearing.

The Commissioner's arguments to the contrary are not availing. The Commissioner contends that "to the extent the evidence regarding Plaintiff's mental . . . conditions was mildly inconclusive or conflicting, such evidentiary conflicts are common in Social Security cases and do not automatically trigger the duty to further develop the record." (Doc. 27, at 8-9). But while the Commissioner contends "the ALJ appropriately resolved any such conflicts here without the need for additional evidence," (*id*. at 9), the ALJ did not address Plaintiff's mental condition at all in the decision. (AR, at 11-20). Thus, it is apparent the ALJ did not weigh or resolve the issue. The Commissioner also argues that Plaintiff's medical records "provide more than a 'mere scintilla' of evidence that Plaintiff had no limitations from mental impairments, which substantially supports the ALJ's RFC

finding." (Doc. 27, at 13). But the ALJ did not make such a finding and the court "may not create or adopt" such "post-hoc rationalizations to support the ALJ's decision." *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). *See also Howard v. Berryhill*, 2017 WL 2915441, at *5 (W.D. Okla. July 7, 2017) ("It is entirely possible that on remand, the ALJ will find that Ms. Howard's anxiety has no impact on her ability to work. But because the ALJ has not made *any* factual findings – one way or the other – about the existence, severity, or functional limitations, if any, imposed by Ms. Howard's anxiety, the Court cannot jump to this conclusion.").

The Commissioner further contends "Plaintiff did not at any time before his appeal to this Court allege any mental impairments, and the minor references in the medical records were insufficient to require the ALJ to further develop the record by ordering a consultative medical examination." (Doc. 27, at 10). First, the Court disagrees with the Commissioner's characterization of the references to Plaintiff's mental condition as "minor." Further, that Plaintiff did not raise the issue earlier in the proceedings is not case-determinative. In a similar case decided by the Tenth Circuit, a neurologist diagnosed a claimant with conversion disorder and two emergency room physicians referenced the diagnosis in medical records. *Williams v. Berryhill*, 682 F. App'x 665, 668 (10th Cir. 2017). The record, however, contained "no medical evidence about her conversion disorder, including its severity and how it affects her ability to function." *Id.* The court held it was clear that "the existing evidence is not sufficient to make a determination of [the claimant's] claim." *Id.* Although the claimant's counsel did not raise the issue of conversion disorder with the ALJ, the Tenth Circuit reversed because there was "a clear

13

need for the examinations" and directed the ALJ on remand to "order consultative examinations to properly consider the diagnosed conversion disorder" to conduct a proper analysis at Step Three and in formulating the RFC. *Id.* at 668-69. The Court finds *Williams* supports this Court's decision to remand for a CE to explore Plaintiff's mental condition, despite the fact it was first raised before this Court.

For the reasons stated above, the ALJ erred by not ordering a CE to address Plaintiff's mental conditions.

### 3. The ALJ Did Not Err by Failing to Order a Consultative Examination Related to Plaintiff's Physical Impairments.

Plaintiff contends a CE was necessary "to further explain his degenerative disc and degenerative joint diseases." (Doc. 22, at 14). In support, he contends he "was referred to an orthopedic specialist several times but was unable to obtain this specialty care" – including one instance where he was unable to pay for such a visit. (*Id.*) He also asserts "there have been no orthopedic assessments of his shoulder, neck, and back in tandem."[6] (*Id.*) In his reply brief, Plaintiff contends the record was inconsistent, arguing he had

---

[6] Plaintiff also contends he "was advised not to lift his elbow over his shoulder," but there was "no indication of which shoulder, if not both, should be kept below this height." (Doc. 22, at 14) (citing AR, at 415-20). This argument is belied by the cited medical record, which indicates that Plaintiff presented to Dr. Richard Greisman, M.D., with left shoulder impingement syndrome and pain in his left shoulder. (AR, at 415). Further, the ALJ cited evidence spanning years in which Plaintiff alleged pain specific to his left shoulder. (*Id.* at 16-17). "The ALJ is entitled to resolve any conflicts in the record," *Haga*, 482 F.3d at 1208, and it is clear the ALJ understood the limit to be to raising Plaintiff's left arm, as the RFC limits Plaintiff to no overhead reaching with his left arm. (*Id.* at 15).

difficulty obtaining comprehensive health care and insinuating the ALJ may not have obtained all available medical records.[7] (Doc. 28, at 4-7).

In formulating the RFC, the ALJ cited medical records related to Plaintiff's physical impairments spanning from 2016 to 2019. (AR, at 16-17). From 2016 through mid-2018, Plaintiff frequently visited medical providers regarding pain in his left shoulder. (*Id.*) At these visits, Plaintiff often had decreased range of motion of his shoulder, but denied back pain. (*Id.* at 16) (citing *id.* at 293-95, 302-07, 339-43, 347-50, 527-30). In July 2018, Dr. Robert Balogh, M.D., examined Plaintiff and found he was strongly positive for left-arm drop and had significantly reduced range of motion to the left shoulder. (*Id.* at 17) (citing *id.* at 382-83). In August 2018, Plaintiff visited Dr. B.J. Thompson, D.O., for pain in both his neck and his back and showed a slightly decreased range of motion. (*Id.*) (citing *id.* at 380-81). Plaintiff received an injection for his left-shoulder pain in September 2018, but an examination revealed lumbar lordosis was absent and a straight-leg test was negative. (*Id.*) (citing *id.* at 376-77, 415-16). In October 2018, Plaintiff reported his condition had improved, but he still had a reduced range of motion in his left shoulder on examination. (*Id.*) (citing *id.* at 413). Plaintiff also underwent an MRI on his shoulder and an x-ray on his cervical spine. (*Id.* at 16-17) (citing 438-39, 534). The Court finds the record – consisting of objective evidence and contemporary subjective reports related to Plaintiff's

---

[7] Plaintiff also argues for the first time in reply that the ALJ improperly considered the evidence related to his physical impairments when formulating the RFC. (Doc. 27, at 7). But, "arguments presented for the first time in a reply brief are waived." *Kruse v. Astrue*, 436 F. App'x 879, 885 n.2 (10th Cir. 2011).

15

shoulders, neck, and back – was sufficient to support the ALJ's disability determination related to Plaintiff's physical impairments.[8]  Thus, the ALJ did err by not ordering a CE.

### B. The Court Does Not Reach Plaintiff's Allegation of Error at Step Five.

Plaintiff also argues the ALJ erred at Step Five because he could not perform any of the jobs identified by the VE and ALJ because they were not compatible with the RFC's limitations on overhead reaching. (Doc. 22, at 20-23). Plaintiff further argues that the ALJ erred by not inquiring further regarding the VE's experience and education. (*Id*. at 16-20). The Court does not reach these issues because the results of the CE obtained on remand may affect the ALJ's consideration of the RFC and change the Step Five analysis. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (holding a court is not required to decide issues that will "be affected by the ALJ's treatment of the case on remand").

---

[8] Plaintiff contends he was unable to pay for a visit with an orthopedic specialist. (Doc. 22, at 14). While an "inability to pay may provide a justification for a claimant's failure to seek treatment," *Threet v. Barnhart*, 353 F.3d 1185, 1190, n.7 (10th Cir. 2003), the ALJ did not discount Plaintiff's alleged symptoms because he did not see a specialist or otherwise fail to seek additional treatment for his physical impairments.

16

## VI.     Conclusion

For the reasons discussed above, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED this 16th day of November, 2021.

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE